IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VERA BRUMMETT and
ERLYN C. KUNC,

        Plaintiffs,

vs.

Case No. 04-1114-JTM

AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN, A Wisconsin
Corporation,

        Defendant.

MEMORANDUM AND ORDER

      This is an action for bad faith against an insurer, American Standard Insurance, by one of its insureds and by the victim of an automobile accident. American Standard has moved for summary judgment. For the reasons stated herein, defendant's motion is hereby granted.

      Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

      In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come

forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The following findings of fact are supported by admissible evidence. On some issues there is evidentiary controversy; where it exists, this is noted below. On the dispositive issues raised by defendant's motion, there is no factual controversy.

**Findings of Fact**

On October 2, 1996, Vera Brummett was seriously injured in a motor vehicle accident involving a car driven by herself and a pickup truck owned by Alan Schwab and operated by plaintiff Erlyn C. Kunc. The pickup was used by Schwab in his construction business which he operated under the business name "Alan's Paving."

There is a fact dispute as to whether Kunc was operating the pickup within the scope of his employment at the time of the accident. Defendant notes prior allegations that Kunc was an employee of Schwab and was driving the truck in the scope of his employment at the time of the accident.

However, American Family's adjustor Liz Swinicki took a tape recorded statement from Erlyn Kunc on November 7, 1996, which was transcribed on November 26, 1996, in which Kunc stated that he was driving the pickup in the course of his employment, but later stated that he had taken the pickup (Schwab did not give it to him) to a convenience store, three to five blocks from the Schwab

home, to get food so they could make breakfast. The two had worked all the previous night and then gone to Schwab's home. Kunc said, "Well I was, I guess we had already got off work, so I can't really say I was really workin'."

American Family's adjustor Jannett Gregg took a tape recorded statement from Schwab on November 20, 1996, which was transcribed November 25, 1996, in which Schwab stated Kunc was on a personal mission at the time of the accident, and was not operating the vehicle within the course of his employment with Alan's Paving. Schwab stated he did not give the vehicle to Kunc.

In *Brummett v. Schwab*, Case No. 96-C-3132, the suit Vera Brummett filed against Alan Schwab, the defense attorney retained by American Family, Ken Weltz, filed an answer on behalf of Schwab on December 9, 1996, stating:

> 3 .... Defendant further admits that at the time of said accident Mr. Kunc was an employee of Alan's Paving Company, but specifically denies that he was acting within the scope of his employment at the time of said accident....
> 4 .... [D]efendant admits that Mr. Kunc was driving an Alan's Paving Company motor vehicle, but specifically denies that he was an employee of Alan's Paving Company acting within the scope and course of his employment at the time of said accident.
> 7 .... This defendant further states that he did not give permission to Mr. Kunc to use his vehicle at the time of said accident, and was unaware that Mr. Kunc had taken the vehicle until after the accident had occurred.

(Plf. Exh. 4).

In *Brummett v. Schwab*, Case No. 96-C-3132, Schwab answered interrogatories under oath, December 23, 1996, stating that he "did not give Mr. Kunc permission to use his vehicle at the time of this accident. Mr. Kunc was not within the scope of his employment when the accident occurred." (Plf. Exh. 16, at 9).

On December 23, 1996, Schwab testified in his deposition that Kunc did not have a vehicle, and would ride his bicycle to the Schwab home and ride to and from work with Schwab. Schwab testified that Kunc returned with him to his home after an all-night paving job, and was going to ride his bicycle to a nearby convenience store to get some breakfast meat for them to cook in the Schwab household. Schwab then proceeded to take a shower. He testified that he did not give Erlyn permission to drive the pickup, and had no knowledge that it was gone until after the accident.

3

On or about April 6, 1996, American Standard issued an automobile insurance policy to Schwab covering the pickup. The policy contained limits of liability for each injured person in the sum of $100,000.00, and aggregate limits for each accident in the sum of $300,000.00. Consequently, if the motor vehicle accident was the result of the negligence of Kunc, the policy provided a maximum of $100,000.00 to compensate Brummett for the injuries she sustained.

Under the section of the policy titled "Part I - Liability Coverage," Kunc and Schwab were both "insured persons," as Schwab was the policyholder and Kunc was driving Schwab's vehicle. The same section provided that once the limits of liability had been paid, American Standard would not defend any suit against an insured person.

In her response, Brummett stresses that the policy was issued to Alan's Paving, not Schwab. But there appears to be no dispute that Alan's Paving is merely the trade name used by Alan Schwab, who operated his business as a sole proprietor. Alan's Paving has no independent legal existence.

On July 22, 1996, American Family Mutual Insurance Company issued a General Liability Business Policy covering Schwab's business, Alan's Paving. This policy contained liability limits of $500,000.00 per occurrence.

On November 7, 1996, Brummett's attorney sent a letter to American Standard adjustor Elizabeth Swiniki, along with medical bills in the amount of $37,900.44. The letter acknowledged that the applicable policy limits were $100,000.00, and stated that the total outstanding medical bills were in excess of $80,000.00. Counsel extended a settlement offer on behalf of Brummett under which Brummett would accept policy limits and execute a covenant not to sue Kunc. The settlement offer was conditioned on (1) Brummett's personal injury protection insurance carrier agreeing that subrogation rights did not exist; and (2) the express agreement of American Standard that the settlement did not extinguish Brummett's rights to bring an action against Kunc's employer, Schwab, under either a negligent entrustment or respondeat superior/agency theory.

On November 11, 1996, Swinicki responded, stating that American Standard was addressing issues with its insured which needed to be resolved prior to any settlement.

On November 12, 1996, Brummett filed an action against Schwab alleging negligence and negligent entrustment, *Vera Brummett v. Alan Schwab d/b/a Alan's Paving Company*, Case No. 96-C-3132 (Eighteenth Judicial District, Sedgwick County, Kansas). Brummett asserted *inter alia* claims of "negligence" and "negligent entrustment." (Exhibit B). On November 22, 1996, Brummett's counsel wrote to Swinicki that his client's medical bills exceeded $80,000 and that she would require additional treatment in the future. He wrote that his client was giving American Standard an opportunity to obtain a covenant not to sue Kunc if the settlement offer was accepted within 30 days of his earlier November 7, 1996 letter.

On November 27, 1996, America Standard retained attorney Ken Weltz to represent Schwab in the *Brummett v. Schwab* litigation. Weltz was advised that Brummett might advance claims on both Schwab's auto and business policy. Brummett's counsel had specifically requested information regarding the business policy, and did not respond to American Family's December 30, 1996 letter stating the reason the insurer believed the business policy provided no coverage, requesting a response by plaintiff's counsel, and stating that in the absence of any concurrence as to non-coverage, the insurer would file a declaratory judgment action. Brummett did not formally advance any claim on the business insurance policy. At some point prior to June 25, 1997, plaintiffs' counsel did tell William Tretbar, an attorney for American Standard, that Brummett did not intend to claim coverage under the business policy.

On November 27, 1996, Carl Wagner, Senior Claims Attorney for American Standard, responded to Brummett's settlement offer. Wagner advised that American Standard could not pay limits under the policy to resolve the claim against Kunc without also resolving the claim against Schwab. He wrote that the reason for American Standard's position was that if the policy was the only insurance coverage available, paying limits to release Kunc would leave Schwab with personal exposure. Wagner reiterated American Standard's obligation to protect both its insureds and proposed a counteroffer as follows:

(1) American [Standard] will tender policy limits of $100,000.00 under the [auto policy];
(2) Ms. Brummett will enter into a covenant not to sue Kunc or proceed against any personal assets he may have;
(3) Ms. Brummett will enter into a covenant not to execute against the personal or business assets of Alan Schwab or Alan's Paving Company as a result of any judgment relating to the accident of October 2, 1996;
(4) Ms. Brummett will be free to proceed with her lawsuit against Alan Schwab d/b/a Alan's Paving on vicarious liability and negligent entrustment theories, with the understanding that any judgment rendered in excess of the $100,000.00 already paid will be satisfied solely out of the coverage, (if available), under the [business policy]; and
(5) The lawsuit against Alan Schwab d/b/a Alan's Paving Company will be defended under a reservation of rights, since we do not believe that coverage for the accident at issue is covered under [the business policy]. I will advise that I expect American Family to proceed with a declaratory judgment action in regard to coverage issue, since I believe it can be resolved as a matter of policy language and will not be dependent upon the underlying facts of the case.

(Def. Exh. I).

On January 15, 1997, Brummett rejected the counteroffer. Brummett advised that her settlement offer remained open, but would be withdrawn if a declaratory judgment action was filed.

In early 1997, American Family filed a declaratory judgment action in Sedgwick County, Kansas District Court regarding the applicability of the business policy to the motor vehicle accident. Kunc, Brummett and Schwab were among the defendants named. Brummet moved to dismiss the action, arguing that she had never made any claim under the business policy. American Family filed a motion for summary judgment. On July 22, 1997, the court entered a journal entry of judgment, finding an actual controversy existed as to coverage under the policy, that the business policy did not provide coverage for the motor vehicle accident, and that American Family had no duty under the business policy to defend Kunc or Schwab in any action brought against them by Brummett arising out of the accident.

On March 21, 1997, Brummett filed a negligence action against Kunc in state court, *Vera Brummett v. Erlyn Kunc*, Case No. 97-C-912 (Eighteenth Judicial District, Sedgwick County, Kansas). On April 15, 1997, Brummett's attorney filed an Amended Petition omitting the allegation that Kunc was an employee of Alan's Paving Company acting within the scope and course of his

employment. Defendant notes, however, that in the contemporaneous action of *Brummett v. Schwab*, Brummett was alleging that Kunc had been acting in the scope of his employment.

On March 21, 1997, Brummett's counsel mailed Wagner a copy of the petition in *Vera Brummett v. Erlyn Kunc*, Case No. 97-C-912 with a letter stating:

> Enclosed is a copy of a Petition that was served upon Erlyn Kunc today in the Butler County Jail. It is likely that he will receive more jail time than he has already served. I presume that if you assign an attorney to represent him and the attorney visits him in the near future, he will still be incarcerated. However, he was being housed at the Beloit County Jail prior to sentencing so he may be transferred back there to serve out the balance of his sentence. Therefore, it would be far more convenient for the assigned counsel to visit him before he gets transferred back to Beloit.

(Plf. Exh. 29).

On April 2, 1997, Wagner corresponded with Kunc and advised him that American Standard had retained attorney Craig West to defend him in *Brummett v. Kunc*. Wagner wrote that it

> does not appear that liability is at issue, or that damages are gravely at issue. However, because Mr. Kunc and Mr. Schwab are both covered under the same policy pertaining to the 1995 Chevrolet pickup, policy number 15-X32352-01, American Family has not felt it could settle the claim against one without settling the claim against the other. In that regard we have offered our policy limits to settle both claims, and quite frankly, I do not see how we can change our position in that particular matter.

(Plf. Exh. 19). He also wrote that "I do not believe that Mr. Weltz [counsel for Schwab] is raising any sort of defense concerning whether Mr. Kunc had permission to drive the pickup involved in the accident, although I do believe he is raising some defenses based upon a alleged lack of Mr. Kunc acting within the scope of his employment." (Id.)

On April 3, 1997 and April 16, 1997, Tim Geary, an attorney for American Standard, wrote Kunc that American Standard would defend him under a reservation of rights, due to an issue as to whether Kunc had permission to operate the truck at the time of the accident, and that the policy did not cover either punitive damages or any judgment amounts over $100,000.00. On April 22, 1997, West wrote Kunc that Brummett's counsel had advised West that he intended to make a settlement

employment. Defendant notes, however, that in the contemporaneous action of *Brummett v. Schwab*, Brummett was alleging that Kunc had been acting in the scope of his employment.

On March 21, 1997, Brummett's counsel mailed Wagner a copy of the petition in *Vera Brummett v. Erlyn Kunc*, Case No. 97-C-912 with a letter stating:

> Enclosed is a copy of a Petition that was served upon Erlyn Kunc today in the Butler County Jail. It is likely that he will receive more jail time than he has already served. I presume that if you assign an attorney to represent him and the attorney visits him in the near future, he will still be incarcerated. However, he was being housed at the Beloit County Jail prior to sentencing so he may be transferred back there to serve out the balance of his sentence. Therefore, it would be far more convenient for the assigned counsel to visit him before he gets transferred back to Beloit.

(Plf. Exh. 29).

On April 2, 1997, Wagner corresponded with Kunc and advised him that American Standard had retained attorney Craig West to defend him in *Brummett v. Kunc*. Wagner wrote that it

> does not appear that liability is at issue, or that damages are gravely at issue. However, because Mr. Kunc and Mr. Schwab are both covered under the same policy pertaining to the 1995 Chevrolet pickup, policy number 15-X32352-01, American Family has not felt it could settle the claim against one without settling the claim against the other. In that regard we have offered our policy limits to settle both claims, and quite frankly, I do not see how we can change our position in that particular matter.

(Plf. Exh. 19). He also wrote that "I do not believe that Mr. Weltz [counsel for Schwab] is raising any sort of defense concerning whether Mr. Kunc had permission to drive the pickup involved in the accident, although I do believe he is raising some defenses based upon a alleged lack of Mr. Kunc acting within the scope of his employment." (Id.)

On April 3, 1997 and April 16, 1997, Tim Geary, an attorney for American Standard, wrote Kunc that American Standard would defend him under a reservation of rights, due to an issue as to whether Kunc had permission to operate the truck at the time of the accident, and that the policy did not cover either punitive damages or any judgment amounts over $100,000.00. On April 22, 1997, West wrote Kunc that Brummett's counsel had advised West that he intended to make a settlement

offer on behalf of Brummett that would allow Kunc to protect his personal assets. West asked Kunc to contact him.

Plaintiff stresses that the attempts by American Standard to communicate with Kunc met with little success. Wagner's letter of April 2 and Geary's of April 3, addressed to the Butler County Jail, were returned because Kunc was no longer an inmate. Geary's letter of April 16 and West's letter of April 22, sent to an address in Wichita, were also returned.

On May 2, 1997, Brummett dismissed *Brummett v. Schwab* without prejudice.

On June 10, 1997, Brummett's counsel extended another settlement offer on behalf of Brummett to Kunc, containing the following terms and conditions:

(1) Entry of judgment against Kunc in the amount of $650,000.00;
(2) Execution by Brummett of a covenant not to execute against Kunc;
(3) Agreement to collect judgment only against available insurance coverage;
(4) Agreement to execute future lien releases;
(5) Assignment by Kunc to Brummett of Kunc's contract rights for insurance benefits and cause of action for negligence/bad faith claims or causes of action arising out of the failure to settle for policy limits;
(6) Agreement by American Standard that this settlement did not violate a consent to settle clause;
(7) Written verification of waiver of PIP subrogation rights.

(Def. Exh. Q).

On June 18, 1997, West sent a letter to Kunc advising that West had tried on several occasions to contact Kunc to no avail, and that it was imperative that Kunc contact West to discuss the latest settlement offer from Brummett. On June 25, 1997, West again wrote to Kunc, addressing the letter in care of Alan's Paving, and asked Kunc to contact West regarding the pending settlement offer.

On June 26, 1997, American Standard attorney Tretbar wrote to Brummett's counsel stating the automobile policy on the accident vehicle driven by Kunc was issued by a separate entity company, American Standard Ins. Co. of Wisconsin.

On July 11, 1997, West told Geary that he had received a voice mail from Schwab's spouse advising that Kunc had told her he did not want anything to do with the lawsuit, and to throw away everything she had received from West as part of West's attempts to contact Kunc.

On August 14, 1997, Tretbar, attorney for American Standard, filed an interpleader and declaratory judgment action regarding the auto policy styled *American Standard Insurance Company of Wisconsin v. Alan L. Schwab*, Case No. 97-1343-WEB (United States District Court for the District of Kansas). Tretbar was unable to locate and serve Kunc in that federal court action, and on September 3, 1997, he wrote to Scott, counsel for Brummett, stating: "Enclosed is a courtesy copy of the complaint that was filed in Federal Court several weeks ago. I thought that we had sent you a copy back around the time that this was filed but we failed to do so and for that, I apologize. To date, we have not obtained service on Kunc. We are still looking for him and will let you know when this is achieved." (Plf. Exhibit 20).

On August 21, 1997, Geary sent correspondence to Kunc advising him of the pending settlement offer and urging him to contact West. Geary also stated that the insurance policy required Kunc to cooperate in the defense of the lawsuit. On September 15, 1997, West again wrote to Kunc, stating that Brummett was seeking a judgment of $1,500,000 against Kunc, which was in excess of the limits of the policy. West urged Kunc to contact him and advised that if West was not contacted by Kunc before September 26, 1997, he would proceed to file a motion to withdraw which he had previously provided Kunc.

> On September 18, 1997, Brummett filed an Answer in the federal action, which stated:
> 23. Defendant Vera Brummett specifically denies that the Court herein can issue a ruling concerning whether plaintiff has a potential bad faith or negligence obligation arising from its prior failure to settle for payment of policy limits in order to receive full relief on behalf of Erlyn Kunc. That claim would be subject to determination in a garnishment in Brummett v. Kunc, Eighteen Judicial District, Sedgwick County District Court, Case Number 97 C 912, if a judgment in excess of $100,000.00 is entered. Thus, any attempt to receive an advance determination of bad faith or negligence on the part of the plaintiff fails to state a claim upon which relief can be granted.

(Plf. Exh. 23).

>The same day, Brummett's counsel sent a letter to West which stated:
>
>>In response to your September 17, 1997, letter, if Plaintiff's outstanding discovery creates prejudice, I will withdraw it. The discovery was intended to do away with the need for liability testimony at trial. That would leave merely the amount of damages and Mr. Kunc's absence at trial can be sufficiently explained to the jury by the Court at the start of the trial and in instructions to prevent prejudice in relation to the damage amount determination. This would allow American Family to fulfill it's obligation to defend Mr. Kunc.
>>However, in the event you or American Family wishes to contest liability, I will stipulate that the liability testimony of Mr. Kunc's statement given to the investigating officer and to Elizabeth Swinicki may be introduced in trial as his testimony with an appropriate instruction concerning his non-availability.
>>My client does not intend to ask the Court to continue the trial. Additionally, I intend to oppose your withdrawal as counsel for Mr. Kunc. It is placing form over substance to state that American Family does not have the right to negotiate a settlement that leaves Mr. Kunc free of any personal exposure resulting from this accident for which he will clearly, under anyone's analysis of the accident facts and damages, be found responsible for an award of damages far in excess of $100,000.00. American Family's policy states in Part I - Liability Coverage:
>>>"We will defend any suit or settle any claim for damages payable under this policy as we think proper."
>>
>>This is sufficient authority for settlement of this claim in the absence of specific authority from Mr. Kunc. It certainly is in his best interest. However, I am willing to let a jury decide the issues of damages and liability and have the Court enter judgment based upon the standard verdict form.
>>I do not believe that time allows us to reschedule the Motion to Withdraw. In an effort to help resolve your September 26, 1997, conflict, I am willing to appear with you and have your Motion to Withdraw heard tomorrow morning and decided by the Court subject to Mr. Kunc appearing at the call of the docket September 26, 1997. If Mr. Kunc were to appear, the attorney from your office can review things with him and I will be standing by to explain any questions he or your office has concerning the Covenant and if necessary, take his trial testimony by deposition that morning. If Mr. Kunc appears next Friday and wishes to be heard on your Motion, we can start from scratch with a full hearing.

(Plf. Exh. 27).

On September 18, 1997, Judge Brown entered an order in the federal action directing American Standard to pay into court the $100,000 per-person limit available under the auto policy. On November 4, 1997, the court ordered the $100,000, which had been paid into court, to be paid out to Brummett.

On September 26, 1997, a journal entry was entered in *Brummett v. Kunc* allowing West to withdraw from further representation of Kunc.

On November 18, 1997, West sent a letter to Kunc stating that although he had previously withdrawn as counsel, he had been advised that Kunc had been located. West stated that he did not want to re-enter his appearance for Kunc until he had heard from Kunc. On November 25, 1997, West wrote Kunc that West had received a voice message from Kunc on November 20, 1997, in which Kunc stated he would call West again. West informed Kunc that he was waiting to be contacted.

On December 30, 1997, West wrote to Geary and stated that West had been scheduled to meet with Kunc on December 29, 1997, but that Kunc had failed to attend the meeting.

On January 28, 1998, West corresponded to Geary and stated that he had not heard from Kunc and, accordingly, could not accept representation of Kunc. Kunc was sent a copy of the correspondence.

On July 8, 1998, Tretbar filed an Application for Default Judgment against Kunc and Schwab in the federal action, stating that "Kunc was served with a summons and a copy of the complaint on November 8, 1997. A copy of the Return of Service is attached hereto and incorporated by this reference as Exhibit 'B'." (Plf. Exh. 14). Exhibit B to the application indicates that Kunc was served in the Elk County Jail by a special process server on November 8, 1997.

On September 18, 1998, Brummett's counsel faxed and mailed a letter to West, Tretbar, and Geary stating:

> I made a written settlement offer on June 10, 1997, to Mr. West and American Family to enter a reasonable judgment against Mr. Kunc and give Mr. Kunc a covenant not to execute against his personal assets in exchange for an assignment of his rights against American Family for negligence and bad faith in their failure to settle for policy limits. That offer was restated in my December 18, 1997, letter to Mr. Geary and Mr. West; and addressed again in my letters of March 16, 1998, and September 17, 1998.
> Mr. Geary's letter fax of September 18, 1998, is a clear abandonment of defense and representation of Mr. Kunc, and taken together with Mr. West's letter of the same date refusing to defend Mr. Kunc, obviously releases Mr. Kunc from any obligation under the American Family policy to cooperate with American Family or counsel hired to defend Mr. Kunc in the investigation, settlement or defense of a claim or suit. It further releases Mr. Kunc from any obligation not to enter into a settlement without the consent of American Family.

> American Family's action is very regrettable since I continued to request your participation in settlement discussions with Mr. Kunc. However, American Family's present abandonment of Mr. Kunc leaves him without counsel or assistance.
> If neither Mr. Kunc nor a representative of American Family appears on December 19, 1998, I will proceed to take a default judgment. I will then litigate against American Family, the issue of its failure to settle for policy limits when the offers were made back in 1997 and thereafter.
> I made it clear in all of my communications that the settlement offer remains open and it is still not too late for American Family to protect its insured by agreeing to the June 10, 1997 settlement offer.

(Plf Exh. 31).

On August 17, 1998, Tretbar or his office hand delivered a letter to Judge Wesley Brown stating:

> We represent plaintiff in the above-referenced matter.
> On July 8, 1998, we filed an application for default judgment with respect to our client's claims involving defendants Schwab and Kunc. These are the only claims remaining in issue in this matter.
> Because another litigant (defendant Vera Brummett) had previously entered an appearance, we served a copy of our application on her counsel, Mr. Scott. To our knowledge, no pleading or other response to the application has been filed on Mrs. Brummett's behalf. We take the position that she does not have standing to object to the entry of judgment against defendants Schwab and Kunc, in any event.
> Enclosed for your consideration is a proposed journal entry of judgment.
> If we can answer any questions about this matter or you would like to hear from counsel formally, please let me know. Otherwise, we would ask the Court to consider entering judgment as per our request.

(Plf Exh. 15).

On the following day, August 18, 1998, without a hearing or notice, Judge Brown executed and filed Tretbar's draft of the Journal Entry of Default Judgment as to Kunc and Schwab. That journal entry contained language stating that –

> 3. Defendant Erlyn C. Kunc ("Kunc") was served with a summons and a copy of the complaint on November 8, 1997.
> ....
> 11. Plaintiff seeks declaratory relief with respect to Schwab and Kunc. Specifically, the complaint prays for an order and judgment declaring that plaintiff's obligations pursuant to the insurance policy in issue are extinguished with plaintiff's payment of the policy proceeds into Court, and that plaintiff has no further obligation to provide Kunc's defense in the civil case commenced by Mrs. Brummett against Kunc in the District Court of Sedgwick County, or to provide Schwab with a defense if Mrs. Brummett renews her action against Schwab.
> 12. Mrs. Brummett does not have standing to object to the entry of an order and judgment of the character requested.

12

> IT IS, THEREFORE, BY THE COURT ORDERED ADJUDGED AND DECREED that judgment should be and the same is hereby entered in favor of plaintiff and against defendants Alan L. Schwab and Erlyn C. Kunc. Plaintiff's obligations to said defendants pursuant to the policy of insurance identified in the complaint are extinguished, and plaintiff has no further obligation to provide said defendants, or either of them, with a defense in any civil action arising from the automobile accident of October 2, 1996. The parties will bear their own costs.

(Plf Exh. Exhibit 21).

On September 17, 1998, counsel for Brummett faxed and mailed a letter to American Family's attorney Geary and to West, the attorney American Family hired to defend Kunc, stating:

> At the 1:30 p.m. hearing, Judge Lahey found Erlyn Kunc in contempt of court and sentenced him to jail ....
> ....
> I prepared and served upon Mr. Kunc, a motion for default judgment which the court scheduled for hearing in December and a notice of trial which scheduled trial in this case for January, 1999. Both dates intended to give Mr. Kunc time to cooperate with American Family and Mr. West in the defense of his case.
> Judge Lahey ordered that I communicate with the two of you advising you of the terms of Mr. Kunc's sentencing so that you can communicate with Mr. Kunc.
> Mr. Kunc is in and will remain in Sedgwick County jail awaiting communication from you.
> My offer to settle for a judgment and a covenant still stands.

(Plf. Exh. 25).

On September 18, 1998, Brummett moved for default judgment in *Brummett v. Kunc*. On the same day, he sent a fax and mailed a letter to Geary and to West stating:

> If requested by American Family or Craig West, I will take or attend the deposition of Eryln Kunc to preserve his testimony and insure his attendance at his deposition, either today, tomorrow or any day next week to insure that his testimony is taken and preserved for trial. Lets get it done before he is released from Jail. Additionally, I will attend a settlement conference with your representative and Mr. Kunc on any of these dates. If you decline, I will meet with Mr. Kunc alone to discuss settlement, but I request that you participate....

(Plf. Exh. 30).

On September 21, 1998, Geary wrote to counsel for Brummett, regarding counsel's earlier assertion that American Standard had acted in bad faith with regard to its handling of the settlement offers extended to Kunc. Geary wrote:

> I can only assume that had American Standard Insurance done this (accepted the offer), you would now be pursuing Mr. Schwab to obtain a judgment and covenant

13

to pursue American Standard Insurance Company for its failure to protect him. Never did you offer to settle this matter for the limits and release of both of our insured. You attempted instead to make American Standard elect between its two insured. This we could not do.

On December 18, 1998, Judge William Rustin of the Sedgwick County District Court entered a Journal Entry of Judgment against Kunc in the amount of $1,250,000.

On May 12, 2003, Brummett and Kunc entered into an agreement whereby Kunc agreed to "pursue any causes of action he may have against American Family or any other insurance company or agency or person who is responsible or was negligent by a failure to negotiate and/or settle in good faith to obtain a release ...." (Def. Exh. HH).

On December 18, 2003, Brummett and Kunc filed the present action wherein they asserted *inter alia* claims of breach of contract, negligence and breach of fiduciary duties against American Standard for failing to settle Brummett's personal injury claim for policy limits.

**Conclusions of Law**

Brummett and Kunc have brought the present bad faith case against American Standard, alleging that it was bad faith to refuse Brummett's settlement offer to Kunc, and that the failure to accept the settlement offer resulted in the excess default judgment against Kunc. The court finds that plaintiffs have no valid tort claims, that Brummett is not a proper party to the remaining contract action, and that American Standard has not been shown to have acted in bad faith by declining the November 7, 1996 settlement offer which explicitly reserved a reservation to sue American Standard's primary insured, Schwab.

To the extent plaintiffs seek recovery in tort, such claims are unfounded in Kansas law, which has concluded that bad faith claims against insurers sound in tort rather than contract. *Guarantee Abstract & Title Co. v. Interstate Fire & Casualty Co.*, 232 Kan. 76, 81, 652 P.2d 665, 669 (1982) (negligent actions by insurer in defense of claim does not authorize a tort claim); *Glenn v. Fleming*, 247 Kan. 296, 312-13, 799 P.2d 79, 89 (1990) (noting Kansas has declined to recognize recovery

for an insurer's bad faith as a tort). Further, even if such claims were generally cognizable under Kansas law, they are time-barred here. Such tort claims are subject to a two-year statute of limitations, K.S.A. 60-513(a)(4). Accordingly, plaintiffs should have brought the present action no more than two years after the date of substantial injury to Kunc. Since default judgment was entered against Kunc on December 18, 1998, the present action should have been filed no later than December 19, 2000. The present action was instead filed on December 18, 2003 — five years after the injury, not two.

The court also finds that Brummett is not a proper party to the action and should be dismissed. Kunc, of course, is a proper party as one of the insureds under the Schwab policy. *Glenn v. Fleming*, 247 Kan. 296, 311, 799 P.2d 79 (1990). Such a claim may be assigned, as the Kansas Supreme Court recognized in *Glenn*, 247 Kan. at 317-18. But Kunc has not assigned any contract claims to Brummett; instead, he has entered into an agreement with Brummett under which Kunc agreed to pursue these claims.

Brummett responds that she has an interest in the matter as a result of the 1998 default judgment against Kunc. But the same may be said for an unsecured creditor of Kunc, and such creditors may not normally participate jointly in litigation with their debtors. Since there has been no assignment of the contract claim consistent with *Glenn v. Fleming*, Brummett is not a proper party and will be dismissed.

Turning to the issue of the bad faith claim of Kunc, the court finds little merit to the matter. Under *Glenn v. Fleming*, an insurer may be liable for an amount in excess of policy limits when it does not act in good faith in its settlement and defense of an action against its insured. However, as this court has noted, caution is appropriate where the evidence fails to establish that the insurer refused to offer its policy limits or insisted on settling for less than such limits, but merely sought additional protections for its insured. *Wade v. EMCASCO*, Slip op. at 14, Dkt. No. 03-1276, (D. Kan. Dec. 29, 2004) (granting summary judgment where evidence showed willingness of insurer to pay policy limits after delay in obtaining medical records).

Here, American Standard owed a duty of good faith to both Schwab and Kunc. The evidence establishes that American Standard was willing to pay its policy limits, but simply refused to enter into a settlement which would have exhausted the policy limits while explicitly preserving the right of Brummett to proceed against Schwab. Plaintiffs have not cited any Kansas case in which bad faith liability has been predicated on the failure of an insurer to agree to a settlement of some but not all of its insureds. Authority from outside Kansas rejects such an imposition of liability, because "an insurer's duty extends to all of its insureds [and so] an insurer may, within the boundaries of good faith, reject a settlement offer that does not include a complete release of all of its insureds." *Strauss v. Farmers Ins. Exchange*, 26 Cal.App.4th 1017, 1021 (1994). In *Strauss*, the court concluded that had the insurer accepted such a qualified settlement offer, it would have acted in bad faith against the insured not covered by the settlement. *Id.* at 1021-22.

Kunc has advanced several arguments in support of a contrary result, but none of these is persuasive. He argues that Schwab was not an insured under the auto policy — and thus American Standard was not obliged to look to his interests, because the policy was formally issued not to Alan Schwab but to "Alan's Paving." This argument is without merit. It is uncontroverted that Schwab operated Alan's Paving as a sole proprietorship. Alan's Paving has no separate legal identity. *See, e.g., Patterson v. V&M Auto Body*, 63 Ohio St. 3d 573, 574-575, 589 N.E.2d 1306 (1992). American Standard owed Schwab a duty of good faith under the policy.

Plaintiff Kunc next argues that it was unnecessary for American Standard to be concerned with the exclusion of Schwab, since the facts of the case demonstrate that Schwab had no potential liability. In advancing this argument, counsel for plaintiffs stresses evidence that Kunc was not operating the vehicle within the scope of his employment, and that Schwab did not give permission for taking the vehicle.

But there is contrasting evidence from Schwab's wife suggesting that Kunc did ask to use the pickup on the morning of the accident, and evidence from Kunc himself that Schwab impliedly instructed him to use the truck when he told him to get breakfast and handed him the keys to the

16

pickup. Accordingly, there remained a potential for negligent entrustment liability on the part of Schwab.

Further, the evidence is not conclusive that Kunc was operating outside the scope of his employment. As noted earlier, Kunc has said both that he was and was not acting in the scope of his employment. In particular, in the testimony he gave on October 7, 1996, Kunc indicated that he was impliedly directed by Schwab to pick up the breakfast. Given that this directive came from his employer and occurred after the two had worked all night together on the job, it is far from certain that Kunc would not be found to have been acting within the scope of his employment". American Standard was obliged to offer him a defense

This is particularly true in light of Brummett's persistent and contemporaneous efforts to pursue legal claims against Schwab. Brummett had already filed an action against Schwab, alleging he was legally responsible for her injuries. She dismissed the action on May 2, 1997, but had explicitly done so without prejudice, thus preserving those claims for future litigation. And American Standard knew, even though it had communicated its willingness to offer its policy limits in exchange for a full settlement, Brummett nevertheless insisted on an explicit reservation of rights against Schwab. Plaintiffs have never explained why — if indeed there were absolutely no possibility that Schwab could ever be liable to Brummett — she insisted on the reservation of rights, insisted to the extent that she rejected an offer to otherwise settle for policy limits.

Last, Kunc argues that American Standard is liable for bad faith because it did not communicate Brummett's settlement offers. Even assuming for the sake of argument that American Standard did not fully apprise Kunc of the settlement offer (and thereby setting aside evidence that part of the problem was Kunc's own instructions to Schwab's wife to destroy communications to him from the insurer), no actionable claim of bad faith is presented. The duty to communicate settlement recognized in *Bollinger v. Nuss*, 202 Kan. 326, 332, 449 P.2d 502 (1969) arises when there is a refusal to settle. *Roberts v. Printup*, 338 F.Supp.2d 1216 (D.Kan. 2004). *See Wade v. EMCASCO*, Slip op. at 16 (finding that *Bollinger* was not applicable because the defendant insurer "never refused

17

to settle the claim, it remained open to settlement pending the receipt of [the injured party]'s medical records"). American Standard was willing to pay its full policy limits, and Kunc has failed to articulate any additional efforts he would have undertaken to protect his interests.

The settlement, on the conditions insisted on by Brummett, was doomed because American Standard was obligated to protect both of its insureds. It is this duty of good faith to both insureds which renders the case distinct from the authorities cited by plaintiffs, and which justifies an award of summary judgment in favor of the insurer.

IT IS ACCORDINGLY ORDERED this 18th day of July, 2005, that defendant's Motion for Summary Judgment (Dkt. No. 10) is hereby granted.

                                                s/ J. Thomas Marten
                                                J. THOMAS MARTEN, JUDGE